UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
In re                                  :        Chapter 7
                                       :
ERIC BROWN,                            :        Case No. 13-12528 (MKV)
                                       :
            Debtor.                    :
                                       :
------------------------------------- X
JOHN S. PEREIRA, as Chapter 7 Trustee for :
the Estate of Eric Brown,              :        Adv. Pro. No. 16-_____ (MKV)
                                       :
            Plaintiff,                 :
                                       :
      v.                               :
                                       :
ERIC BROWN,                            :
                                       :
            Defendant.                 :
------------------------------------- X

## COMPLAINT

John S. Pereira (the "Trustee"), as the duly appointed Chapter 7 Trustee for the estate of Eric Brown (the "Debtor"), in the above-captioned Chapter 7 bankruptcy case (the "Bankruptcy Case"), by and through his undersigned attorneys, brings this Complaint against the Debtor and respectfully alleges[1] as follows:

## NATURE OF THE ACTION

1.      This is an adversary proceeding brought by the Trustee pursuant to section 541, 727(a)(2), (3), (4) and (5) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") and Rules 7001(4) and 7003 of the Federal Rules of Bankruptcy Procedure seeking a denial of the Debtor's discharge.

---

[1] The allegations in this Complaint are based upon the Trustee's information and belief, obtained from, without limitation, the Debtor's bankruptcy filings, the sworn testimony given by the Debtor at meetings of creditors held pursuant to section 341(a) of the Bankruptcy Code and at the Trustee's partially completed examination of the Debtor pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Rule 2004 Examination"), a review of documents produced in connection with the case, documents obtained by the Trustee and/or his professionals from creditors and other sources, and a review of publicly available information.

## THE PARTIES

2.      The Trustee is a resident of the State of New York and is a licensed attorney maintaining an office at 641 Lexington Avenue, 13th Floor, New York New York 10022.

3.      Upon information and belief, the Debtor is an individual presently residing at 101 West 87th Street, Suite 515, New York, New York 10024.

## JURISDICTION AND VENUE

4.       The United States District Court for the Southern District of New York (the "District Court") has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a), 157(b) and 1334(b).  By virtue of 28 U.S.C. § 157(a) and the Amended Standing Order of Reference dated January 31, 2012 of Chief Judge Loretta A. Preska of the District Court, this adversary proceeding is automatically referred to the United States Bankruptcy Court for the Southern District of New York (the "Court").

5.      This adversary proceeding is a core proceeding under, among other things, 28 U.S.C. § 157(b)(2)(A) and (J).  Because this is a core proceeding, the Bankruptcy Court has jurisdiction and power under 28 U.S.C. § 157(b) to hear and determine this adversary proceeding.  The Trustee consents to the entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties herein, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6.      Venue of this proceeding in this Court is proper pursuant to 28 U.S.C. § 1409(a) because this action is one arising in or under the chapter 7 case of the Debtor.

2

## FACTS

I.     **The Bankruptcy Case**

7.      On August 1, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), and thereby commenced a chapter 7 case in the United States Bankruptcy Court for the Southern District of New York (the "Court").

8.      On August 2, 2013, the Trustee was duly appointed as the trustee in the Debtor's chapter 7 case.

9.      By stipulations and orders of this Court, the Trustee's time to object to discharge was extended through April 15, 2016.

II.     **The Debtor's History of Business Frauds And Concealment of Books And Records**

10.     The Debtor has been primarily engaged, for well over a decade, in the ownership and operation of parking garages and related car rental agencies and real estate ventures, principally in the New York metropolitan area, but to some extent in New Jersey and Florida as well. During that period, the Debtor induced many individuals to invest in the Debtor's business ventures, with uniformly disastrous results, and many of those investors have consequently accused the Debtor of acts of fraud.

11.     Lending credence to creditors' claims of fraud, the Debtor identifies in the Bankruptcy Schedules that he has filed in this chapter 7 case (the "2014 Schedules") twenty-three (23) incorporated or unincorporated business entities in which he has an interest, all of which are purportedly defunct. All twenty-three (23) of these unsuccessful business ventures were apparently commenced and came to a worthless end during the period of roughly eight (8) years between an earlier voluntary chapter 7 filing made by the Debtor in June of 2005 and the

28234728v2

Debtor's more recent voluntary chapter 7 filing on August 1, 2013.  The Debtor's abysmal track record between the Debtor's two chapter 7 filings is remarkable in and of itself, and suggests something more devious and intentional than just a string of bad luck.  This string of failures is all the more suspicious when one considers that the Debtor, who purported to be penniless in the Schedules filed in his 2005 chapter 7 case (the "2005 Schedules"), as well as his 2014 Schedules, has publicly proclaimed that he and his brother Ian Brown sold an extremely successful parking garage venture in 2001 for over $45 million and that the two brothers have started a new parking venture that they "still operate successfully today."

12.    The Debtor's self-touted business and financial successes through the early 2000's are theoretically reconcilable with the Debtor's history of two chapter 7 filings and a long list of business failures thereafter, but this drastic purported reversal of fortune adds credence to the allegations of creditors that they were fraudulently induced to invest funds with the Debtor for ventures that the Debtor never really intended to pursue in good faith.

13.    Also during the past several years, the Debtor has engaged in apparently fraudulent securities trading activities, inducing individuals to invest in the stock of various public companies, most notably International Development & Environmental Holdings Corp. and DAM Holdings, Inc., now known as Premier Beverage Group Corp.  Those activities resulted in a Securities and Exchange Commission ("SEC") investigation and ultimately an SEC action against the Debtor in which the SEC alleged in its Complaint:

> From November 2010 through January 2011, Defendant Eric S. Brown engaged in a fraudulent market manipulation scheme involving International Development & Environmental Holdings Corp. ("IDEH") stock. (CP.  ¶ 1).
>
> Less than a year later, from October 2011 through November 2011, Brown engaged in a second fraudulent market manipulation scheme, this time involving DAM Holdings, Inc. n/k/a Premier Beverage Group Corp. ("DAMH") stock. (CP ¶ 2).

4

As part of the schemes, Brown paid a corrupt promoter to induce him and his "purported buying group" to purchase shares of IDEH and DAMH stock in the open market. (CP ¶ 3).

Unbeknownst to Brown, the corrupt promoter was a witness cooperating with the FBI. (CP ¶ 4).

*SEC v. Eric S. Brown*, Case No. 14-61197, Complaint ¶¶ 1-4, Southern District of Florida, May 22, 2014.

14.     On October 10, 2014, a judgment was entered against the Debtor in the aforesaid SEC action on one count of mail fraud.  The judgment indicates that the mail fraud count, to which the Debtor pleaded guilty, ended July 31, 2014, during the pendency of this chapter 7 case.

15.     There are ample additional reasons to question the Debtor's honesty.   In the instant chapter 7 case, the Debtor, both individually and through counsel, has advised the Trustee and Trustee's counsel that he has no records of his business or personal financial affairs during the period between his first chapter 7 filing in 2005 and his second chapter 7 filing in 2014, with the exception of a handful of largely useless documents that have been produced.

16.     Having filed a voluntary petition under chapter 7 of the Bankruptcy Code in 2005, and having participated in the administration of that bankruptcy case, the Debtor has certainly been aware at all times since 2005 of the importance of keeping records of one's businesses and finances.   Nevertheless, the Debtor has either failed to preserve any recorded information or has knowingly and fraudulently concealed the books and records relating to the Debtor's financial affairs and businesses from the Trustee.

17.     The Debtor's flagrant and all-encompassing failure to maintain business and personal financial records present sufficient grounds to deny the Debtor a discharge under section 727(a) of the Bankruptcy Code.

5

III.     **Fraudulent Transfers to the Debtor's Spouse as Purported Compensation**

18.     On January 27, 2016, at an examination pursuant to Bankruptcy Rule 2004, the Debtor testified that his wife, Simona Brown ("Brown"), currently works occasionally for a doctor and part time for herself, as a "life coach."  The Debtor further testified, however, that starting around 2010 or 2011, Brown worked for Barryville Management Corp. ("BMC"), a consulting firm formed and owned by the Debtor's brother, Ian Brown.  The Debtor's testimony, which is consistent with the Debtor's 2014 Schedules, indicates that Brown was receiving $9,000 per month from BMC when the 2014 Schedules were filed, and presumably for months or years before and after those schedules were filed.  When asked what kind of work Brown did for BMC, the Debtor testified that Brown "was checking some rates, doing some office work."

19.     Significantly, the Debtor's 2014 Schedules and the Debtor's testimony on January 27, 2016 indicate that the Debtor has also worked for BMC for the past several years and that his job at BMC has been the Debtor's principal, if not his sole, source of income.  Moreover, as reflected in the 2014 Schedules, the Debtor's salary at BMC was approximately the same as Brown's salary ($9,300 per month for the Debtor and $9,000 per month for Brown).  Incredibly, while BMC was paying Brown $9,000 per month for part time office work, the Debtor was working full time at the BMC offices both on garage business and other ventures and making only $300 per month more.  It is obvious from this gross disparity that the Debtor has worked out an arrangement with BMC (the Debtor's brother) to pay Brown (the Debtor's spouse) half of the Debtor's compensation, even though Brown had done little or nothing to earn it.

20.     During the January 27, 2016 examination, the Debtor further testified that Brown stopped working at BMC when Brown obtained her "life coach" license (some time during the

Debtor's chapter 7 case), and around the same time the Debtor's salary at BMC was increased from around $110,000 per year to around $300,000 per year.

21.    The near tripling of Debtor's salary at BMC during the pendency of this chapter 7 case was undoubtedly not the result of the Debtor's increased productivity or hours, since those attributes apparently did not change.  Rather, with abundant experience in the filing of chapter 7 cases and with access to the advice of multiple experienced chapter 7 lawyers over the past several years, the Debtor was no doubt aware of the provision in section 541(a)(6) of the Bankruptcy Code that: "earnings from services performed by an individual [chapter 7] debtor after the commencement of the case" do not constitute property of the debtor's bankruptcy estate.  Clearly, once the Debtor had commenced his second chapter 7 case, he no longer saw an advantage to having a large part of his earnings shifted to his spouse, so he took Brown off the BMC payroll and had his own salary raised.

22.    The foregoing circumstances provide ample information to support a belief that the Debtor, in the years prior to his chapter 7 filing, deliberately had his compensation from BMC diverted and transferred directly to Brown, and one can only infer from these circumstances that the Debtor engaged in this artifice to hinder, delay and defraud his creditors.

23.     To date, the Debtor, Brown and other related parties, including the Debtor's brother Ian Brown, have stonewalled the Trustee's efforts to take meaningful discovery of the Debtor's business and affairs.  As a result, the Trustee is not presently able to quantify the amount of Debtor's compensation diverted to Brown as aforesaid, or identify other transfers of cash or property undoubtedly diverted from the Debtor to Brown for little or no consideration, but there is ample reason to believe that many such transfers have been committed.

28234728v2

24.     A separate adversary proceeding (Adv. Pro. No. 16- 01049 (CGM), the "Brown Adversary Proceeding") has been commenced against Brown pursuant to section 544, 548 and 550 of the Bankruptcy Code and New York Debtor Creditor Law §§ 273, 274, 275, 276, 276-a and 278, to avoid and recover fraudulent conveyances made to the Defendants, plus applicable interest thereon, and to obtain related relief.

25.     The actual amount of unearned transfers made to Brown can only be determined through complete discovery in the Brown Adversary Proceeding or in this action, or an honest and complete accounting by Brown or the Debtor.  However, assuming based upon the Debtor's testimony that Brown received payments from BMC of approximately $9,000 per month from at least 2011 through the Petition Date, it appears that the Debtor, with the intent to hinder, delay and/or defraud his creditors, transferred property of the Debtor in an amount no less than $108,000 within one (1) year of the Petition Date.

## FIRST CLAIM FOR RELIEF

### (Objection to Discharge Under Bankruptcy Code Section 727(a)(2)(A))

26.     The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "25" as though set forth fully herein.

27.     The Debtor, with intent to hinder, delay or defraud a creditor and/or the Trustee, as an officer of the estate, has concealed and transferred, or permitted to be transferred, property of the Debtor within one year before the date of filing the Petition.

28.     By virtue of the foregoing, the Trustee requests that this Court deny a discharge to the Debtor pursuant to section 727(a)(2)(A) of the Bankruptcy Code.

28234728v2

## SECOND CLAIM FOR RELIEF

### (Objection to Discharge Under Bankruptcy Code Section 727(a)(3))

29.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "28" as though set forth fully herein.

30.    Upon information and belief, the Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records, and papers, from which the Debtor's financial condition or business transactions might be ascertained, and such act or failure to act was not justified under all of the circumstances.

31.    By virtue of the foregoing, the Trustee requests that this Court deny a discharge to the Debtor pursuant to section 727(a)(3) of the Bankruptcy Code.

## THIRD CLAIM FOR RELIEF

### (Objection to Discharge Under Bankruptcy Code Section 727(a)(4)(D))

32.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "31" as though set forth fully herein.

33.    The Debtor has withheld from the Trustee recorded information, including books, documents, records, and papers relating to the Debtor's property or financial affairs.

34.    By virtue of the foregoing, the Trustee requests that this Court deny a discharge to the Debtor pursuant to Bankruptcy Code §727(a)(4)(D).

## FOURTH CLAIM FOR RELIEF

### (Objection to Discharge Under Bankruptcy Code Section 727(a)(5))

35.    The Trustee repeats and realleges each and every allegation contained in paragraphs "1" through "34" as though set forth fully herein.

36.    The Debtor has failed to explain satisfactorily the loss of assets or deficiency of assets to meet the Debtor's liabilities.

28234728v2

37.     By virtue of the foregoing, the Trustee requests that this Court deny a discharge to the Debtor pursuant to section 727(a)(5) of the Bankruptcy Code.

## <u>RESERVATION OF RIGHTS</u>

38.     The Trustee hereby specifically reserves his rights to amend this Complaint to: (i) include further information regarding the above claims for relief; and (ii) bring any and all other causes of action that he may maintain against the Debtor, to the extent discovery in this action or further investigation by the Trustee reveals such further causes of action (collectively, the "Amendments"), such that the Amendments shall relate back to this original Complaint.

## <u>RELIEF REQUESTED</u>

WHEREFORE, the Trustee requests that this Court enter judgment in favor of the Trustee as follows:

(i)     on Trustee's First Claim for relief for an Order denying the Debtor a discharge pursuant to section 727(a)(2)(A) of the Bankruptcy Code;

(ii)     on Trustee's Second Claim for relief for an Order denying the Debtor a discharge pursuant to section727(a)(3) of the Bankruptcy Code;

(iii)     on Trustee's Third Claim for relief for an Order denying the Debtor a discharge pursuant to section 727(a)(4)(D) of the Bankruptcy Code;

(iv)     on Trustee's Fourth Claim for relief for an Order denying the Debtor a discharge pursuant to section 727(a)(5) of the Bankruptcy Code; and

28234728v2

(v)    such other, further and different relief as this Court deems just and proper.

Dated: New York, New York
     April 14, 2016

Respectfully submitted,

TROUTMAN SANDERS LLP

By: */s/ John P. Campo*
     John P. Campo
     Lee W. Stremba
     Brett D. Goodman
     875 Third Avenue
     New York, New York 10022
     Tel. No. (212) 704-6000

*Counsel for the Chapter 7 Trustee*

28234728v2